UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
                                                  :
**OVERNIGHT, LLC,**                               :
                                                  :        10-CIV-9564 (BSJ)
                          Plaintiff,              :
        v.                                        :
                                                  :
**AARON KAUFMAN,**                                :
                                                  :
                          Defendant.              :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

# MEMORANDUM OF LAW IN OPPOSITION TO
# PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT

**Krantz & Berman LLP**
747 Third Avenue, 32nd Floor
New York, New York 10017
212-661-0009

Counsel for Defendant

## **TABLE OF CONTENTS**

**BACKGROUND and PROCEDURAL POSTURE**................................................................. 1

**FACTS RELEVANT TO THE MOTION**........................................................................... 3

    Facts Relevant To Defendant's Meritorious Defense........................................................ 3

    Facts Relevant To Service Of The Complaint.................................................................. 3

        Purported Service of the Complaint in New Jersey........................................................ 3

        Purported Service in Texas.......................................................................................... 4

        Purported Service in California..................................................................................... 5

**ARGUMENT**....................................................................................................................... 5

    I.     DEFENDANT IS NOT IN DEFAULT AS THE COMPLAINT WAS
           NEVER PROPERLYSERVED.................................................................................. 5

           A.  Service of the Complaint in New Jersey, Texas and
               California Was Defective Under New York Law....................................... 6

           B.  Service of the Complaint Was Defective Under New Jersey Law............. 8

           C.  Service of the Complaint Was Defective Under Texas Law.................... 10

           D.  Service of the Complaint Was Defective Under California Law............. 11

           E.  Service of the Complaint Was Defective Under Federal Rules
               Methods.................................................................................................. 12

    II.    IF DEFENDANT IS IN DEFAULT GOOD CAUSE EXISTS TO
           DENY THE MOTION FOR A DEFAULT JUDGMENT.................................... 13

           A.  Kaufman's Default Was Not Willful As He Had A
               Good Faith Belief That He Had Not Been Properly Served..................... 14

                 1.  Plaintiff Did Not Intend To Serve Defendant Properly............... 17

           B.  Setting Aside the Default Judgment Will Not Prejudice Overnight........ 19

           C.  Kaufman Has A Meritorious Defense to the Action............................... 20

    III.   THE DEFAULT JUDGMENT SHOULD BE VACATED ON
           PUBLIC POLICY GROUNDS.................................................................................. 22

**CONCLUSION**..................................................................................................................... **23**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X
                                           :

**OVERNIGHT, LLC,**                          :

                       Plaintiff,    :        10-CIV-9564

   v.                               :

**AARON KAUFMAN,**                      :

                     Defendant.   :
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

## MEMORANDUM OF LAW IN OPPOSITION TO
## PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT

       Defendant Aaron Kaufman, by his attorneys, Krantz & Berman LLP, respectfully submits

this Memorandum of Law in opposition to the Plaintiff's motion for a default judgment.

Plaintiff's Motion should be denied because Mr. Kaufman was never properly served with the

Complaint, and therefore is not in default.  Moreover, to the extent that the Court should find that

he was validly served (which we strenuously contest), there is nonetheless good cause to deny

the motion for default because (1) any default was not willful, given Mr. Kaufman's good-faith

belief that service was insufficient; (2) Plaintiff will not be prejudiced whatsoever by permitting

Defendant to answer and properly defend himself against the Complaint, since it has only been a

few weeks since defendant's purported time to answer allegedly expired; (3) Mr. Kaufman has

meritorious defenses to this action, all of which should be fully and properly adjudicated before

this Court; and (4) public policy strongly favors the disposition of cases on their merits.  For all

of these reasons, Plaintiff's motion for a default judgment should be denied.

## BACKGROUND and PROCEDURAL POSTURE

       This case arises out of a fractious employment relationship between Aaron Kaufman

("Mr. Kaufman") and Overnight, LLC ("Overnight"), the principal of which is Rick Schwartz

("Mr. Schwartz"). The employment relationship terminated in or about November 2009, when Mr. Schwartz fired Mr. Kaufman.

The employment relationship was governed by an employment agreement (the "Employment Agreement") entered into on or about February 16, 2009, which Agreement was subsequently modified. The Employment Agreement contains a venue provision requiring that all disputes be resolved in a court of competent jurisdiction in Los Angeles, California.

On December 23, 2010, more than a year after the employment relationship ended, Overnight filed the instant action in the Southern District of New York. Because the action related in part to a dispute over the film *Black Swan*, news of the lawsuit received sizeable press coverage both in trade publications and in mainstream newspapers like the *New York Times*.

According to Overnight, efforts were made to serve Mr. Kaufman with the Summons and Complaint at various locations in New Jersey, Texas and California during the period December 23, 2010 through January 25, 2011. However, as set forth below, none of those efforts were successful or constituted proper service. As a result, Mr. Kaufman did not serve an Answer or otherwise respond to the Complaint.

On March 7, 2011, Plaintiff secured from the Clerk of the Court a Certificate of Default. The Certificate of Default was premised upon Plaintiff's affidavits of service on Mr. Kaufman at a residential location in New Jersey and at a business in Austin, Texas. That same day, Plaintiff filed the instant Motion for Default with the Court with a return date of March 24, 2011.

On March 13, 2011, Plaintiff personally served Defendant with the Motion for Default. Plaintiff served Defendant in a very public setting, just moments after Defendant had finished hosting a panel discussion at one of the entertainment industry's most prestigious film events known as "South by Southwest." Declaration of Aaron Kaufman, dated April 1, 2011 ("Kaufman Dec.") ¶ 16.

2

Upon being served with the Motion for Default Judgment, Mr. Kaufman immediately sought out and then retained counsel. *Id.* ¶ 17. A Stipulation and Order was entered by the Court to permit Defendant additional time to respond to the Motion for Default. Exhibit 1 to Declaration of Marjorie E. Berman dated April 1, 2011 ("Berman Dec.").

## FACTS RELEVANT TO THE MOTION

### FACTS RELEVANT TO DEFENDANT'S MERITORIOUS DEFENSE

The facts relevant to Defendant's meritorious defense to the action are set forth in the Kaufman Declaration and in Section II (C), below.

### FACTS RELEVANT TO SERVICE OF THE COMPLAINT

Purported Service of the Complaint in New Jersey

According to Plaintiff, on four occasions between December 23 and December 29, 2010, Overnight attempted to deliver the Summons and Complaint personally to Mr. Kaufman at 105 Russell Avenue, Edgewater, New Jersey, (the "New Jersey Address") believed to Mr. Kaufman's home. Exh. 2 to Berman Dec. ("New Jersey Aff"). The process server was unable, however, to locate Mr. Kaufman at that address. *Id.* The New Jersey Address is an apartment building and although there is a concierge at the building, Kaufman Dec. ¶ 9, the process server did not leave any papers with the concierge or attempt to affix the Complaint in any manner. Rather, approximately one month later, on January 25, 2011, the process server mailed an envelope to Aaron Kaufman, addressed to 105 Russell Avenue, by regular mail, in an envelope marked "Personal and Confidential." Berman Aff., Exh. 2.

On the dates service was attempted, Mr. Kaufman did not reside at 105 Russell Avenue in Edgewater, New Jersey. Kaufman Dec., ¶ 5, Declaration of Sarah Kaufman, dated March 31, 2011 ("S. Kaufman Dec."), ¶ 3. He had moved to Austin, Texas some months earlier, after separating from his wife, and had removed his personal belongings from 105 Russell Avenue

3

prior to December 23, 2010. Kaufman Dec. ¶ 4, S. Kaufman Dec. ¶ 2. Although Mr. Kaufman's family lived at 105 Russell Avenue at the time, Mr. Kaufman did not. *Id.*

The envelope did arrive at 105 Russell Avenue. S. Kaufman Dec. ¶ 4 . However, Mr. Kaufman's wife did not give the envelope to Mr. Kaufman or advise Mr. Kaufman that the envelope marked "Personal and Confidential" had been delivered. *Id.,* Kaufman Dec. ¶ 7. Rather, with no knowledge of what was contained in the envelope, she placed it in a pile with other mail waiting for Mr. Kaufman. S. Kaufman Dec. ¶ 4.

Purported Service in Texas

After failing to serve Mr. Kaufman personally in New Jersey (as described above), approximately three weeks later, on January 21, 2011, Overnight attempted to serve the Summons and Complaint in Texas. Exh. 3 to Berman Aff. (the "Texas Affidavit"). The Summons and Complaint was addressed to Mr. Kaufman at Troublemaker Studios on 4900 Old Manor Road, Austin, Texas. There is no indication from the affidavit that the process server attempted to find Mr. Kaufman – or even to find the business itself. *Id.* Rather, the papers were delivered to a Lonnie Edwards ("Edwards"), noted as "Security/Concierge" at the building. The Affidavit described Edwards as "a person employed therein and authorized to accept service." 4900 Old Manor Road was characterized as Mr. Kaufman's "usual place of business." *Id.*

Troublemaker Studios is a business owned by film maker Robert Rodriguez. Mr. Kaufman was never employed by Troublemaker Studios, nor was 4900 Old Manor Road his usual place of business. Kaufman Dec. ¶ 10. Further, he does not know anyone named Lonnie Edwards and has never designated Edwards as someone who is authorized to accept service on his behalf. *Id.,* ¶ 11. Although Mr. Kaufman does provide consulting services to Robert Rodriguez in other capacities, he has never been employed by Troublemaker Studios and was not, at  the time of attempted service, providing any consulting services to Troublemaker.

4

Purported Service in California

For reasons that can only be understood as malicious, at the same time Overnight was purportedly serving Mr. Kaufman at "his usual place of business" in Texas, *see* Texas Aff., Overnight was also attempting to serve Mr. Kaufman at two businesses in California – Bold Films and Odd Lot. Exh. 4 to Berman Aff. ("California Aff."). Mr. Kaufman, however, has never been employed by, or performed consulting services for, either of these businesses - a fact known to Plaintiff. Kaufman Dec. ¶¶ 13-14. However, an investor in each of those businesses is also an investor in a businesses named Quickdraw, which is owned by Robert Rodriguez and for whom Mr. Kaufman does perform consulting services. *Id.* The parties' relationship with Mr. Rodriguez is at the heart of the instant Complaint. Delivering the Complaint to these businesses, which were wholly unaffiliated with Mr. Kaufman and could not be even innocently mistaken for his place of business, had no purpose other than to embarrass Mr. Kaufman before industry colleagues and to damage his ongoing professional endeavors. Indeed, so absurd was service of process in California, that it was not even mentioned on the Certificate of Default Plaintiff's counsel prepared for the Clerk's signature.

## ARGUMENT

## I.   DEFENDANT IS NOT IN DEFAULT AS THE COMPLAINT WAS NEVER PROPERLY SERVED

Pursuant to Fed. R. Civ. P. 12(a), a defendant must serve an answer, or other responsive pleading, within 21 days after *being served* with a summons and complaint. Thus, unless the summons and complaint is actually served, no duty to answer arises. In the instant case, Mr. Kaufman was not properly served. Accordingly, Mr. Kaufman's duty to answer was never triggered and Defendant is not in default.

Fed. R. Civ. P. 4(e) provides that an individual may be served "in a judicial district of the United States by:

1)  following the state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district court is located or where service is made, or

2)  doing any of the following:

> (A) delivering a copy of the summons and of the complaint to the individual personally;
>
> (B) leaving a copy of each at the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or
>
> (C) delivering a copy of each to an agent authorized by appointment or by law to receive service of process."

Thus, in any of the states in which Plaintiff attempted to serve Kaufman, it could have effected service under (1) New York law (because the Southern District is located in New York State); or (2) the Federal Rules of Civil Procedure; or (3) the law of the State in which service was attempted. Yet, despite the plethora of options, Plaintiff failed to effect service under *any* of the available statutes. Service of the Complaint in New Jersey was defective under New York Law, New Jersey Law and the FRCP. Service of the Complaint in Texas was defective under New York Law, Texas Law and the FRCP. Finally, service of the Complaint in California was defective under New York Law, California Law and the FRCP.

(a)  **Service of the Complaint in New Jersey, Texas
      and California Was Defective Under New York Law**

The purported service in New Jersey, Texas and California was defective under New York Law. Section 313 of the New York Civil Practice Law and Rules ("CPLR") provides that a person subject to the jurisdiction of the courts of the state may be served outside the state "in the same manner as service is made within the state…"

6

Pursuant to CPLR 308(2), service may be made by "delivering the summons…" "to a person of suitable age and discretion at the actual place of business, dwelling place or usual place of abode" of the person being served, followed by "either mailing the summons to the person at his or her last known residence or by mailing the summons by first class mail" at the person's "actual place of business."[1]  Actual place of business is defined in CPLR 308(6) as "any location that the defendant, through regular solicitation or advertisement, has held out as its place of business." As a last alternative, pursuant to CPLR 308(4), where service cannot be made under 308(1) or 308 (2), service can be accomplished by "affixing the summons to the door of either the actual place of business, dwelling place or usual place of abode" and by "mailing the summons by first class mail to the person to be served at his or her last known residence . . . or his or her actual place of business."

Service of process in New Jersey was defective under CPLR 308(2) and 308 (4).  First, as set forth above, the New Jersey Address was not Mr. Kaufman's  "usual place of abode" or "dwelling place" at the time of service.  Moreover, the process server did not leave the Complaint with any one at all, let alone a "person or suitable age and discretion."  Nor did he "affix the summons to the door."   Because under New York Law a two step process is required in the absence of personal service, service was defective under New York Law regardless of whether the New Jersey Address was or was not Mr. Kaufman's "usual place of abode" or "dwelling place,"  and regardless of whether mailing was proper.

Service of process in Texas was also improper under New York Law.  Under CPLR 308(2), the Complaint must be delivered to "a person of suitable age and discretion at the actual place of business."  In this case, the Complaint was neither delivered to Mr. Kaufman's "actual place of business" nor to "a person of suitable age and discretion."  Neither Troublemaker

---

[1]      Personal service on an individual under CPLR § 308(1) is not discussed because it is undisputed that Mr. Kaufman was not served personally in any state.

Studios nor 4900 Old Manor Road, Austin, TX was Mr. Kaufman's actual place of business.
Kaufman Dec. ¶ 10.  Mr. Kaufman was not employed by Troublemaker or at 4900 Old Manor
Road and has no office or business there.  *Id.*  Further, Edwards, the "security/concierge"
person who allegedly accepted service on Mr. Kaufman's behalf at 4900 Old Manor Road, is not
a person of "suitable age and discretion."  Edwards, a security guard, not even for Troublemaker
Studios, but for the building located at 4900 Old Manor Road,  had no authority to accept service
on behalf of Kaufman.  *See Kearney v. Neurosurgeons of New York*, 31 A.D.3d 390, 817
N.Y.S.2d 502 (2d Dep't 2006) (where defendant, a doctor who was not an employee of the
hospital, maintained an office in a separate building of a hospital complex, plaintiffs' attempt to
serve the doctor by leaving the summons with a security director located in the main
administrative complex was deemed deficient because hospital was not defendant's actual place
of business).  *See also, Belandran by Belandran v. North Shore Medical Group, P.C.*, 251
A.D.2d 522, 674 N.Y.S.2d 724 (App. Div. 2d Dep't 1988)(defendant's former actual place of
business not sufficient to meet the service requirements under 308(2)).

 Finally, service of process in California was also invalid under New York law.  Neither
Bold Films nor Odd Lot can remotely qualify as Mr. Kaufman's "actual place of business" under
CPLR 308(1) or 308(2).  Thus, the "person[s] in charge"  with whom the Complaint was
purportedly left were certainly not persons of suitable age and discretion on which to serve the
Complaint. *See* California Affidavit.

 For all of these reasons, service on Mr. Kaufman was defective under New York Law.

(b) **Service of the Complaint Was Defective Under New Jersey Law**

 New Jersey Rules of Court 4:4-3 provides that, if personal service cannot be effected
after a reasonable and good faith attempt, "service may be made by registered or certified mail,
return receipt requested, to the usual place of abode…"  Service on Mr. Kaufman at the New

Jersey Address was defective under this provision because (1) service was not made by registered or certified mail and (2) the Complaint was not mailed to Kaufman's "usual place of abode."

According to the New Jersey Affidavit, the process server, Darren Hinds, made four failed attempts to personally serve Mr. Kaufman at 105 Russell Avenue, Edgewater, New Jersey Mr. Hinds admits that he was "unable to effect service" on any of these occasions. Berman Aff., Exh. 2.   Nearly a month later, Mr. Hinds "deposited in a United States Post Office with New York State, via Regular First Class Mail, a true copy of the [Complaint] via *Regular First Class Mail* and addressed to the defendant at 105 Russell Avenue." *Id.* (emphasis added).

Service was not effective under New Jersey Rules of Court 4:4-3 because the rule requires that Complaints be delivered via "registered or certified mail." Mr. Hinds admitted that he served the Complaint by regular mail, not by certified or registered mail as required. *Id.*

Service also fails under New Jersey Law because 105 Russell Avenue, Edgewater, New Jersey was not Mr. Kaufman's "usual place of abode" at the time of service. Kaufman Dec. ¶¶ 4, 5; Sarah Kaufman Dec. ¶¶ 2,3. *See A&S Mfg. Co. v. Wetzler*, 110 N.J. Super. 565 (N.J. Ch. 1970)(where defendant took person al belongings and was employed in Canada for 43 days before service was effected it was improper to serve him at his former residence in New Jersey). Courts in New Jersey have consistently applied the rule that one's "usual place of abode" is limited to where one is "actually living at the time when service is made." *Palisades Collection, LLC v. Brown*, 2010 WL 5104824, at *7 (N.J. Super. Ct. App. Div. Dec. 15, 2010), *citing Warfield v. Fisher*, 94 N.J.Sup. 142, 146 (N.D. Super. Ct. Law Div. 1967). The Second Circuit noted this requirement under New Jersey Law in *National Development Co. v. Triad Holding Corp.*, 930 F.2d 253, 257 (2d Cir.), *cert denied*, 502 U.S. 968, 112 S. Ct. 440 (1991), stating that "some courts have expressly required that the defendant sought to be served be actually living at

9

the residence at the time service is effected." (*citing Camden Safe-Deposit & Trust Co. v. Barbour*, 66 N.J.L. 510, 44 A. 198 (Super.Ct. 1899) and *Feighan v. Sobers*, 84 N.J.L. 575, 87 A. 636 (Super.Ct. 1913), *aff'd*, 86 N.J.L. 356 (N.J. 1914)).   105 Russell Avenue was no longer the defendant's "place of abode" at the time of service.

For all of these reasons, service on Mr. Kaufman was defective under New Jersey Law.

(c)   **Service of the Complaint Was Defective Under Texas Law**

Rule 106(a) of the Texas Civil Practice & Remedies Code provides that service of process is effected by:

> 1) delivering to the defendant, in person, a true copy of the citation[2] with the date of delivery endorsed thereon with a copy of the petition attached thereto, or
>
> 2) mailing to the defendant by registered or certified mail, return receipt requested, a true copy of the citation with a copy of the petition attached thereto.

Service was grossly defective under both methods of this provision.  It is undisputed that service was not effected on Mr. Kaufman personally.  Further, the summons or petition was not mailed to Mr. Kaufman via any method of mail delivery at any address in Texas.  *See* Texas Aff.[3]

Texas case law is very clear that to be effective, process must comply strictly with the state's rules.  As the Texas Court of Appeals noted in *Silver B & Laviolette, LLC v. GH Contracting, Inc.*, 2010 WL 4053791, at *2 (Tex. Ct. App. Oct. 12, 2010), "it is well established that strict compliance with the rules of service must be evident from the face of the record for a

---

[2] "A Citation under the Texas Rules of Civil Procedure appears to be the equivalent to a summons under the Federal Rules of Civil Procedure." *Air-Shields, Inc. v. Fullam*, 891 F.2d 63, 64, n.1 (3d Cir. 1989)

[3] Tex. R. Civ. P. 21(a) permits service of process of any pleading, *other than the citation* to be served upon the filing of a cause of action, by: "delivering a copy to the party to be served, or the party's duly authorized agent or attorney of record…, either in person or by agent or by courier receipted delivery or by certified or registered mail, to the party's last known address…,." Even assuming service could be effected under this provision, which does not appear to be the case, service was defective because (1) the Complaint was not delivered to Mr. Kaufman nor his authorized agent or attorney of record and (2) the Complaint was not delivered to Mr. Kaufman's last known address.

reviewing court to uphold a default judgment." Without strict compliance, the service is "invalid and of no effect." *Id.*, (*quoting Ulvade Country Club v. Martin Linen Supply Co.*, 690 S.W.2d 884, 885 (Tex. 1985)).

Notably, the Texas Affidavit states that "Substitute-Business Office" service was made on defendant "in compliance with State Statutes." *See* Texas Aff.  Such "substituted service" in this case is patently deficient under Texas Law.  While court ordered substituted service is allowed under Tex. R. Civ. P. 106(b), it can be done only "upon motion supported by affidavit" demonstrating, among other things,  that service has been "attempted under either (a)(1) or (2)" [personal service and registered mail] and has not been successful.  Like service under 106(a), court ordered substitute service is equally strictly construed.  *Financial Federal Credit, Inc. v. Construction Cans, Inc.*, 2010 WL 231754, at *1 (S.D.Tex. Jan.20, 2010) (noting that Texas courts require strict adherence to 106(b) and reasonable notice of a lawsuit is mandatory).  In this case there is no evidence of any such motion being made to the court or any order permitting substituted service.

### (d)  <u>Service of the Complaint Was Defective Under California Law</u>

In California, service may be effected under California Code of Civil Procedure 415.20 (a) by:

> leaving a copy of the summons and complaint during usual office hours in his or her office, or if no physical address is known, at his or her usual mailing address...with the person who is apparently in charge thereof, and by thereafter mailing a copy of the summons and complaint by first-class mail, postage prepaid to the person to be served at the place where a copy of the summons and complaint were left...

or under Cal. Civ. Proc. Code 415.20 (b) by

> leaving a copy of the summons and complaint at the person's dwelling house, usual place of abode, usual place of business, or usual mailing address... in the presence of... a person apparently in charge of his or her office, place of business, or usual mailing address...and by thereafter mailing a copy of the summons and of the complaint by first-class mail, postage prepaid to the person to be served at the place where a copy of the summons and complaint were left...

At the California locations, Plaintiff did leave the Complaint and mail the Complaint thereafter. *See* California Aff.   However, as the plaintiff chose to serve Mr. Kaufman at businesses that were not "his," service was utterly defective.  Mr. Kaufman has never been employed by, or performed services for, Bold Films or Odd Lot, the locations where service was attempted.  In addition, at no time has Mr. Kaufman had a mailing address at either of these businesses locations.  Furthermore, Mr. Kaufman has no office of any kind in California and never has.   He also has no home address in California and never has.  Kaufman Dec. ¶ ¶ 13-15.

For all of these reasons, service of process was invalid under California law.

(e)      **Service of the Complaint Was Defective Under Federal Rules Methods**

Plaintiff also had the option of serving the Complaint under one of the prescribed methods laid out in Fed. R. Civ. P. 4(e)(2), including (1) delivering a copy of the summons and complaint to Mr. Kaufman personally; or (2) leaving a copy of each at Mr. Kaufman's dwelling or usual place of abode with someone of suitable age and discretion who resides there; or (3) delivering a copy of each to an agent authorized by appointment or by law to receive service of process. Plaintiff failed to effect service under this provision as well.  First, as stated above, there is no dispute that Mr. Kaufman was not personally served.   As to the second method, the process server in New Jersey did not leave a copy at Mr. Kaufman's dwelling or usual place of abode. *See* New Jersey Aff.  In addition, the address where personal service was attempted was not Mr. Kaufman's "dwelling or usual place of abode."   *See National Development Co.* at 257 (noting that dwelling houses and usual places of abode must contain "sufficient indicia of permanence") and *Khan v. Khan*, 360 Fed. Appx. 202, 203, 2010 WL 93111, at *1 (2d Cir. Jan. 12 2010)(while a person may have more than one dwelling house or usual place of abode, each must contain "sufficient indicia of permanence").

Finally, the summons and complaint was not delivered to "an agent authorized by appointment or law to receive service of process." Lonnie Edwards, with whom the papers were left in Texas, was not even known to Mr. Kaufman, let alone authorized to accept service of process. Kaufman Dec. ¶ 11. In addition, the two people with whom the Complaint was purportedly left in at Bold Films and Odd Lot were not known to Mr. Kaufman and similarly not authorized agents. *Id*, ¶ ¶ 13-14.

As service of process was wholly defective – whether under New York Law, New Jersey Law, Texas Law, California Law and the Federal Rules of Civil Procedure – Mr. Kaufman was never validly served with the summons and complaint. Accordingly, the duty to answer never arose and Mr. Kaufman therefore is not in default. *See Arbitron, Inc. v. Marathon Media*, LLC, 2008 WL 892366, at *3 (S.D.N.Y. Apr. 1, 2008) (noting unequivocally that default judgments must be vacated if a defendant was not properly served with a summons and complaint (*citing Grace v. Bank Leumi Trust Co.*, 443 F.3d 180, 193 (2d. Cir. 2006)(judgment issued by court without personal jurisdiction over defendant is void), *cert. denied*, 549 U.S. 1114, 127 S.Ct. 962 (2007)).

For this reason, Plaintiff's Motion should be denied. If Defendant is not in default, the Court's analysis can end here and the instant Motion can be denied. However, in an abundance of caution, and in the event the Court finds service was proper, we proceed with the analysis below.

## II.   IF DEFENDANT IS IN DEFAULT GOOD CAUSE EXISTS TO DENY THE MOTION FOR A DEFAULT JUDGMENT

Pursuant to Federal Rules of Civil Procedure 55 (c), "the court may set aside an entry of default for good cause."[4] Courts construe "good cause" generously. When doubt exists, "the

---

[4] On its face, Rule 55 (c) appears to apply to setting aside default judgments already entered. Courts in this Circuit apply the same factor analysis in evaluating opposition to motions for entry

doubt 'should be resolved in favor of the defaulting party'" to ensure that to the greatest extent possible, disputes are resolved on their merits.  *Powerserve Int'l Inc. v. Lavi*, 239 F.3d 508, 514 (2d Cir. 2001) (*quoting Enron Oil Corp. v. Diakuhara*, 10 F. 3d 90, 95 (2d Cir. 1993)).

Three factors are relevant in deciding whether "good cause" exists to set aside an entry of default, or to deny an application for a default judgment:  1) whether the default was willful, 2) whether setting aside the default would prejudice the adversary, and 3) whether a meritorious defense is presented. *Abreu v. Nicholls*, 368 Fed. Appx. 191, 2010 WL 726520, at *1 (2d Cir. Mar. 3, 1020); *Powerserve*, 239 F.3d at 514.   In this case, good cause exists to deny entry of a default judgment because (1) the default was not willful; rather Defendant had a good faith belief that he was not properly served; and (2) setting aside the default will not prejudice Overnight in any manner, and (3) a meritorious defense is presented.

### A.  __Kaufman's Default Was Not Willful As He Had A Good Faith Belief That He Had Not Been Properly Served__

To establish willfulness, a plaintiff must show more than just negligence or carelessness. *American Stevedoring at* *2.  In this case, Mr. Kaufman's failure to appear was not willful and Mr. Kaufman did not ignore a Complaint that was validly served on him.  Rather, Mr. Kaufman did not answer the Complaint because he had a good faith belief that the Complaint was not properly served on him and that he was not required to make an appearance in court if service was improper.  A default is not willful when founded upon a good faith belief. *Keebler v. Rath*, 2010 WL 4140306 at *1 (2d Cir. Oct. 22, 2010)(a good faith belief, even if a mistake, will not support a finding that a default was willful).  As Defendant's failure to answer was not willful, Plaintiff's Motion for Default should be denied.

---

of default under 55(c) as motions to vacate default judgments under 60(b). *American Stevedoring, Inc. v. Banana Distributors, Inc.* 1999 WL 731425, at * 2 (S.D.N.Y. Sept. 20, 1999).  However, Rule 55(c) motions to vacate are evaluated under a "more liberal" standard than motions to vacate default judgment under Rule 60(b). *Rosewood Apartments Corp. v. Perpignano*, 2000 WL 1725021, at *3 (S.D.N.Y. Nov. 17, 2000).

Although Mr. Kaufman was aware, based upon the press coverage, that Overnight had filed a lawsuit against him, he was not aware that efforts had been made to serve him at his family's home in New Jersey. Kaufman Dec ¶ 6. Specifically, he was unaware that a process server had attempted to personally deliver the Complaint to him at the New Jersey address, nor would there have been any reason for him to know that given that nothing was left for him. Further, he was unaware that the process server had then mailed to him a package, since his wife neither told him about the package nor forwarded the package to him. *Id.* ¶ ¶ 7, 8; S. Kaufmann Dec. ¶ ¶ 4,5.

With respect to the complaint that was delivered to Troublemaker Studios, Mr. Kaufman does not work for Troublemaker Studios, nor is he employed at any business located at 4900 Manor Road in Austin, Texas. Although Mr. Kaufman became aware at some point that a Complaint addressed to him was delivered to Troublemaker Studios, since he did not work for Troublemaker Studios, he did not believe that he had been properly served. Kaufman Dec. ¶ 12. Accordingly, he did not believe that he had a duty to answer the Complaint unless and until he was properly served.

Indeed, once Mr. Kaufman was personally served with the Motion for Default Judgment, he recognized that service as proper. Thus, he immediately responded to the Motion by retaining counsel and appearing in the action. *Id.*, ¶ 17.

Under these circumstances, it cannot be said that Mr. Kaufman's failure to appear was willful. Rather, a litigant's duty to appear in an action is triggered not by an awareness that a complaint has been filed, but by the proper execution of service. As the Supreme Court stated in *Murphy Brothers , Inc. v. Michetti Pipe Stringing*, Inc., 526 U.S. 344, 347-48, 119 S.Ct. 1325, 1325 (1999) it is a "bedrock principle" that:

> [a]n individual or entity named as a defendant  is not obliged to engage
> in litigation unless notified of the action, and brought under a court's authority,

> by formal process. . . .[and] 'not by mere receipt of the complaint unattended by any
> formal service.'

*Gerena v. Korb*, 617 F.3d 197, 202 (2d Cir. 2010)(whether a defendant received prompt notice of

the action is of no moment in a challenge to service of process without service under statutory

law); *Sartor v. Toussaint*, 70 Fed. App. 11, 13 2002 WL 32127283, at *2 (2d Cir. Sept. 6, 2002)

(citing New York State cases and holding that mere notice of suit is insufficient to trigger the

duty to answer; rather the statutory requirements for service must be met); *Einheber v.*

*Bodenheimer*, 12 Misc.3d 1177(A), 820 N.Y.S. 842 (N.Y. Sup. 2006)(case law clearly holds that

notice by means other than those authorized by statute do not bring a defendant within the

court's jurisdiction); *Macchia v. Russo*, 67 N.Y.2d 592, 594, 505 N.Y.S.2d 591, 496 N.E.2d 680

(1986)(notice does not bring defendant within the jurisdiction of the court unless by means

authorized by statute).

      Since Mr. Kaufman was totally unaware that anything had been delivered to the New

Jersey Address, and was not employed by or at the address associated with 4900 Manor Road,

Austin, Texas, he had every reason to believe that he had not been properly served.  Thus, he had

a good faith belief that he had no duty to respond to the Complaint.

      Defendant's good faith belief that he had been properly served is in stark contrast to cases

where defendants fail to respond to effective service. E.g. *SEC v. Alexander*, 2004 WL 1468528,

at  9 (S.D.N.Y. Jun. 28, 2004)(holding that defendant's conduct was deliberate and egregious and

therefore willful); *State Farm Mut. Ins. Co. v. Cohan*, 2011 WL 386786, at *1 (2d Cir. Feb. 8,

2011) (affirming default judgment where defendant failed to oppose the motion for a default

judgment even after entering an appearance); *Arbitron, Inc.*, at * 5  (S.D.N.Y. 2008) (denying

motion to set aside a default judgment where defendants defaulted deliberately by ignoring the

summons and complaint, which had been  properly served under New York law by delivering it

to corporate offices where receptionist represented that she was authorized to accept papers on

their behalf.); *Gucci America, Inc., Guess?, Inc. v. Gold Center Jewelry*, 158 F.3d 631, 635 (2d Cir. 1998) (affirming default judgment where the defendants were served with the complaints and subsequent application for damages and made "deliberate" decisions not to respond to the application for damages, and therefore acted willfully); *RC Entertainment, Inc. v. Rodriguez*, 1999 WL 777903, at *2 (S.D.N.Y. Sept, 29, 1999)(finding that the defendant's conduct was willful where they were properly served and failed timely to respond).  In contrast to these cases, here there was no deliberate effort to fail to respond to valid service of process.  Thus, there can be no finding of willfulness.

### 1.    Plaintiff Did Not Intend To Serve Defendant Properly

Many facts and unanswered questions related to service of the Complaint suggest that Plaintiff purposefully failed to serve Defendant properly so that it could secure a default judgment for the purposes of embarrassing Defendant publicly.  First, it is unfathomable that with so many service options, Plaintiff could have simply failed, as a matter of repeated error, to effect service properly under any of them.  Second, after four attempts to deliver personally the Summons and Complaint to the New Jersey apartment, why did Plaintiff not direct the process server to leave it with the Concierge – the most basic aspect of service of process in New York. Third, if Plaintiff believed that service in Texas was effective, as it now argues, why would Plaintiff have mailed the Complaint (and improperly so) to Mr. Kaufman in New Jersey after serving him in Texas?   Fourth, Plaintiff knew that Defendant provided services to Robert Rodriguez at a business called Quickdraw and could easily have served him there.

That Overnight knew about Quickdraw is demonstrated by the fact that it delivered the Complaint to Bold Films and Odd Lot.  These businesses have nothing whatsoever to do with Mr. Kaufman.   Indeed the only connection that exists between him and those businesses is that an investor in Bold Films and an investor in Odd Lot are also investors in Quickdraw.  That

Plaintiff attempted to serve Mr. Kaufman at those businesses demonstrates that Plaintiff was fully aware that he could have properly served Mr. Kaufman at Quickdraw if it wanted to do so. Plaintiff was not interested in actually delivering the Complaint to Mr. Kaufman. Rather, it was interested only in inflicting reputational damage on him by serving an entity which could not possibly be deemed appropriate.

Indeed, Plaintiff knew exactly how to find Mr. Kaufman and to serve him, as it served Mr. Kaufman personally with the Motion for Default at the South by Southwest Festival before hundreds of industry people, only one week after it filed its Motion for Default. By the time Plaintiff filed the Motion for Default, it had already been long announced that Mr. Kaufman would be speaking at the film festival and thus it knew that it would have the opportunity to serve Mr. Kaufman at that time. However, Plaintiff chose instead to run to Court to secure the Certificate of Default and file the Motion so that it could serve Mr. Kaufman with the Default Motion rather than the Complaint itself. Under Fed. R. Civ. P. 55(b)(1) Plaintiff had no obligation to give Mr. Kaufman notice of the default if it believed that Mr. Kaufman had not appeared. Apparently, did so solely for the purpose of being able to plant a splash story about Mr. Kaufman being served with a Default Motion at the South by Southwest Film Festival on page 6 of the *New York Post*. See Exh. 5 to Berman Aff.

For all of these reasons, it is plain that Plaintiff's efforts to date have not been intended to commence a lawsuit against Mr. Kaufman that would compel an appearance and an answer. Rather, every move was calculated solely for the purposes of embarrassing Mr. Kaufman and litigating the matter in the press.

B.    **Setting Aside the Default Judgment Will Not Prejudice Overnight**

18

Under the second prong of the "good cause" determination, the Court must determine if denying the application for a default judgment will cause undue prejudice to the plaintiff.   To establish prejudice a plaintiff must demonstrate  that denial of the motion for default will "result in the loss of evidence, create increased difficulties for discovery, or provide greater opportunity for fraud and collusion." *SDI Capital Resources, Inc. v. 48-50 9th Operating, Inc., 1998 WL 512961 at \*2 (S.D.N.Y. Aug. 18, 1998)(quoting Davis v. Musler*, 713 F.2d 907, 916 (2d Cir. 1983); *see also Robinson v. Sanctuary Music*, 383 Fed. Appx. 54, 2010 WL 2649849, at \*3 (2d Cir. Jul. 1, 2010)(no prejudice where plaintiffs failed to show delay would cause loss of evidence, make discovery difficult or provide increased opportunity for fraud or collusion). There is nothing in the instant case remotely demonstrating that setting aside the entry of default will result in any loss of evidence, create any barrier to discovery or provide any opportunity for fraud of any kind.

Prejudice to the adversary cannot be shown by delay alone. *American Stevedoring, Inc.*, at \*3.  However, in any event, there has been virtually no delay.  To begin with, Plaintiff waited more than a year to even commence the instant action.  Then, although Plaintiff filed the action in December, 2010, it let several weeks expire between its first effort to serve Mr. Kaufman and then its subsequent efforts on January 25, 2011.  Indeed, even if service had been properly effected in New Jersey by mailing, the earliest that Defendant's time to answer would have run would have been February 15, 2011,  which was  21 days after January 25, 2011, when the complaint was mailed to the New Jersey address.   Thus, a mere three weeks after the earliest moment the Answer could have been due, Plaintiff filed its Motion for Default. There has been no prejudice whatsoever. *Cf. Arbitron Inc., at \*4* (finding prejudice where the case was already over a year old and the plaintiff expended substantial resources in trying to collect the money it was owed); *State Farm Mut. Aut. Ins. Co*. at \*2 (finding prejudice where plaintiff had expended

19

considerable time and resources litigating the motion for a default judgment and defendants waited nearly four moths to appear upon receiving timely notice of the suit).  Here, the plaintiff is in no worse position than if Mr. Kaufman had asked for a short extension on his time to answer.  Minimal resources have been expended by the plaintiff and no more effort would be required by plaintiff in denying its motion for a default judgment than to permit the defendant time to properly answer the complaint.

### C.  **Kaufman Has A Meritorious Defense to the Action**

To vacate a default judgment, the defendant need only "support its general denials with some underlying facts." *RC Entertainment, Inc.* at *2.  It is not necessary that those facts prove definitively that the defense is "ultimately persuasive." *American Alliance Ins. Co., Ltd. v. Eagle Ins. Co.*, 92 F.3d 57, 61 (2d Cir. 1996), *quoting Anilina Fabrique de Colorants v. Aakash Chemicals & Dyestuffs, Inc.*, 856 F.2d 873, 879 (7th Cir. 1988).  A meritorious defense is shown where, based on the defendant's version of the events, the factfinder still has "some determination to make." *Id.*

Plaintiff alleges a variety of wrongs by Defendant.  First, it claims that Defendant breached his employment agreement by misappropriating business relationships and working on business ventures in competition with Plaintiff while employed.  Next, it claims that Defendant breached his fiduciary duties to Plaintiff by entering into aggressive financing arrangements. Finally, it claims that Defendant misappropriated corporate opportunities by exploiting Plaintiff's business relationships – principally a relationship with film producer Robert Rodriguez – in order to develop a competing motion picture company.

Mr. Kaufman's accompanying declaration sets forth the true factual version of the relationship between Overnight and Mr. Kaufman and demonstrates that he has meritorious defenses to this action. Mr. Kaufman's facts demonstrate that  (1) he did not breach  his

Employment Agreement; rather he dutifully and effectively carried out his responsibilities with Overnight and did not work on business ventures in competition with Overnight while employed; (2) due to Mr. Schwartz's erratic behavior and Mr. Kaufman's discovery of improper finances at Overnight, Overnight and Mr. Kaufman modified the Employment Agreement to release Mr. Kaufman from his responsibilities, subject to Mr. Kaufman's completion of the financing phase of Black Swan which he carried out until prohibited to do so by Mr. Schwartz; (3) he did not breach his fiduciary duty to Overnight  in connection with the financing arrangements he secured, which were within industry norms, approved by Overnight's principal Mr. Schwartz and earned a profit for Overnight; and (4)  he did not usurp any corporate opportunities that belonged to Overnight or use confidential information to develop a competing business while employed by Overnight or thereafter. *Id.*    To the contrary, it was Mr. Kaufman who introduced Overnight to Robert Rodriguez (as well as many other contacts) -- not the other way around.  Kaufman Dec. ¶ ¶ 18-33.

Indeed, the central premise of Overnight's Complaint – that Mr. Schwartz had a pre-existing long term relationship with Robert Rodriguez that he made available to Mr. Kaufman and that Mr. Kaufman then usurped – is utter fiction.  Rather, it was Mr. Kaufman who reached out to Robert Rodriguez initially, Mr. Kaufman who proposed the idea of Overnight working with Robert Rodriguez to produce *Machete,* Mr. Kaufman who successfully achieved that goal for Overnight, Mr. Kaufman who had the contacts in the industry to accomplish film financing for Overnight, Mr. Kaufman who persisted in carrying out his duties for Overnight until prohibited from doing so by Mr. Schwartz and Mr. Kaufman who enabled Overnight to recoup its initial investment in both *Machete* and *Black Swan*  and earn a profitable return.  Further, the change in Overnight's designation from Producer to Executive Producer occurred long after Mr.

Kaufman's departure from *Black Swan* and was solely the result of Mr. Schwartz's actions and decisions.

Moreover, Mr. Kaufman has numerous defenses to assert including but not limited to (1) lack of jurisdiction due to improper service; (2) change of venue based upon the Employment Agreement; (3) unclean hands; (4) failure to state a claim for usurpation of corporation opportunity; (5) ratification ; (6) lack of damages, and (7) laches.

In addition, Mr. Kaufman has multiple counterclaims against Overnight and Rick Schwartz including (1) breach of the Employment Agreement with respect to, among other matters, compensation and Kaufman's loss of a producer credit in connection with Machette; (2) defamation claims against Mr. Schwartz; and (3) damages caused by Mr. Schwartz's theft of Mr. Kaufman's e-mail identity after Mr. Kaufman's departure from Overnight.

## III.   THE DEFAULT JUDGMENT SHOULD BE VACATED ON PUBLIC POLICY GROUNDS

In addition to Defendant having established good cause to vacate the default judgment, Plaintiff's motion should be denied on public policy grounds.   Courts in the Second Circuit have repeatedly expressed a "strong 'preference for resolving disputes on the merits.'" *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005); *Pecarsky v. Galaxiworld*, 249 F.3d 167, 172 (2nd Cir. 2001), (*quoting Powerserve Int'l Inc. v. Lavi*, 239 F.3d 508, 514 (2d Cir. 2001)); *In re Rates – Viper Patent Litigation*, 2011 WL 856261, at *2 (S.D.N.Y. Mar. 20, 2011).   A default judgment is "the most severe sanction which the court may apply," *Cody v. Mello*, 59 F.3d 13, 15 (2d Cir. 1995) and strongly disfavored.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendant respectfully requests that the Court deny Plaintiff's

motion for a default judgment and set a schedule for Defendant to Answer or otherwise respond

to the Complaint.

Dated: April 1, 2011
       New York, New York

**KRANTZ & BERMAN LLP**

By: _____
           Marjorie Berman

747 Third Avenue
32nd Floor
New York, New York 10017
212-661-0009

Attorneys for Defendant

23